THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD WOODRUFF, Defendant-Appellant.

Fourth District   No. 15866

Opinion filed July 2, 1980.

Richard J. Wilson and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

C. David Vogel, State's Attorney, of Pontiac (Gary J. Anderson and Darryl Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Must a trial judge advise a defendant of his right to defend *pro se*?

No.

We affirm.

Woodruff was charged with four counts of aggravated battery and three counts of battery. A jury convicted him of one count of aggravated battery and three counts of battery. He was then sentenced to 10 years for the aggravated battery and three terms of 364 days each for the battery convictions. All the sentences are to be served concurrent to each other but consecutive to the sentences that defendant was serving at the time of the offense.

On appeal, the only issue presented is whether defendant was denied his sixth amendment right to self-representation because the trial court failed to advise him of this right.

The offenses of which defendant was convicted stemmed from an incident involving the defendant and three correctional officers at the Pontiac Correctional Center on January 23, 1979. When defendant learned that the indictments had been returned against him, he sent a letter to Circuit Judge William Caisley requesting information about the charges so that he could prepare a defense. On March 9, 1979, a "letter of deposition"—signed by the defendant—was filed in the circuit court. In this "deposition" the defendant described his poor physical condition, alleged that certain correctional officers had beaten him, and requested the court to "swear out countercharges" against the correctional officers. He also requested counsel to visit him at the correctional facility and help him "obtain adequate medical attention, et al."

The public defender was then appointed to represent the defendant. But in a letter filed March 20, 1979, defendant requested that this attorney be dismissed and that counsel who was fair, impartial, and would properly represent him be appointed. The judge responded to this letter by informing the defendant that if a problem existed concerning counsel, defendant should bring it to the attention of the court at his next appearance.

On March 21, 1979, the defendant appeared, with appointed counsel, for a hearing before Judge Caisley. The defendant indicated that he desired to consult with the State's Attorney, apparently concerning defendant's allegations of mistreatment by certain correctional officers. Defense counsel stated that he had no objection to such a conversation and a brief recess was held.

After the defendant consulted with the State's Attorney, the court informed him that he had the right to a bench or a jury trial and the right to have a lawyer represent him. Defendant was informed that he had the right to compel witnesses to testify in his behalf and to cross-examine the State's witnesses. He was also informed of the presumption of innocence and the burden of proof, including the fact that he must be proved guilty beyond a reasonable doubt. The court then asked defendant if he had discussed the pleas that he wished to enter with defense counsel.

Defendant responded that he had not told counsel how he wished to plead because he was not accepting him as counsel. Defendant then stated that he wished to plead not guilty and would also like to have his right to "fair and impartial counsel." The court accepted defendant's plea and his request for a trial by jury.

Defendant then asked when he was going to be furnished with counsel and the court inquired into the reasons for defendant's dissatisfaction with appointed counsel. Defendant responded that counsel had made statements showing that he was not fair and impartial "as provided by law." According to defendant, counsel told him that whatever happened, four or five years would make no difference and that counsel did not want fellow gang members as witnesses. Defendant felt this was a direct reference to his membership in a gang.

When asked to respond, defense counsel stated that he had not inferred, directly or indirectly, that defendant was a gang member. He explained his reference to gang members as a statement stressing the importance of having credible, reliable witnesses, if possible, as opposed to witnesses whose credibility could be attacked by the State. Explaining the comment about the four or five years, counsel stated that he was not completely sure why the charges were brought against the defendant from a prosecution standpoint because any sentence that might eventually be obtained would, in counsel's opinion, not affect defendant's ultimate release date due to the length of the term that he was presently serving. Counsel stated that he did not mean to convey to defendant the idea that counsel did not think the disposition of this case was important. Counsel repeatedly tried to assure defendant that he would do all he could to make sure that defendant received a fair trial and that he was not prejudiced in any way against the defendant.

Defendant again expressed his opposition to appointed counsel, but the court, over this objection, denied the motion to discharge counsel. Defendant was informed that if he desired to obtain counsel of his own choice, he could do so but at his own expense.

Defendant then stated that he had a constitutional right to fair and impartial counsel and that the court had already violated his constitutional rights by allowing the State's Attorney to appear at the grand jury proceeding when defendant was absent. Defendant felt that he had a right to be present at each and every hearing that might be had, including the grand jury proceeding.

The court informed defendant that the right to be present did not extend to appearing before the grand jury since it is a secret proceeding.

Defendant again addressed the court, stating that the proceeding is not secret and that if the State's Attorney appears, defendant also could appear. Defendant was told that he was mistaken and that the function of

the grand jury is to determine whether he should be charged. In response to defendant's question as to why he was not allowed to be represented and present evidence at the grand jury proceeding, the court explained that if the grand jury did not subpoena him he was not entitled to be there nor was he entitled to have counsel present. The court further explained that the grand jury is an investigative and charging body which is not open to the general public.

Defendant continued to disagree with the court about his right to be present at the grand jury proceeding and stated that he had the right to "fair and impartial counsel." He also demanded that right. Defendant told the court not to try to use loopholes in the law because defendant was "not just any other dummy, you can't get through the loopholes on me. I am entitled to fair and impartial counsel and I am requesting this."

After a further colloquy between defendant and the court, defendant was asked to be quiet so that the court could proceed. Defendant then stated that motions could not be heard if defendant did not have counsel and he would not accept appointed counsel.

After the court ruled on certain pretrial motions, defendant was remanded to the custody of the Department of Corrections. He then stated that was where he was going to stay until he received fair and impartial counsel. He also stated that he wished to be present at the proceedings but he wanted counsel.

On April 16, 1979, a hearing on defendant's motion for change of venue was held. The public defender was still acting on defendant's behalf and he presented arguments with respect to the motion. At one point during these proceedings, the defendant requested to exercise his right to address the court on a point he felt relevant to the motion. The court told the defendant that he had counsel for that purpose and that the court did not need additional argument. The court then decided to allow the motion for change of venue and informed the defendant that the result would be a delay in his trial. The defendant told the court that he had requested that the State's Attorney file charges but the State's Attorney had refused. The court ruled that this information was not relevant to the present proceedings.

After the court ruled that defendant's comments would be stricken from the record, the defendant asked the court to seal his, and the court's, copy of the "pro se affidavit of appearance" and told the court he would like to appeal the decision. The court asked the defendant which decision he was referring to and the defendant responded that he was talking about his accusation that the prosecutor was not acting in the course of justice. The court told the defendant he could file a notice of appeal. Defendant then asked the court to have affidavits of appearance sealed by the court.

A *pro se* motion for change of venue and counsel of his choice was filed by the defendant on the same date. This motion, entitled "pro se affidavit of appearance" apparently was prepared with the assistance of another "paralegal prisoner."

At the April 16, 1979, hearing, the defendant requested a phone call order so that he could notify his family of the criminal proceedings against him in case he decided to seek private counsel. He also requested an order that he be brought to court in a wheelchair and he requested medical attention. The court granted the phone call orders and also noted, for the record, that at defendant's prior appearance he was carried into court in a chair by correctional officers. The defendant then asked for the names of the State's Attorneys because he intended to seek civil redress for the denial of his rights.

At trial, the defendant was represented by the public defender and the defendant made no objection to this representation while the trial was in progress. At the close of the State's case, the defense rested without offering evidence. Following closing arguments, the jury found the defendant guilty of one count of aggravated battery and three counts of battery.

In defendant's motion for a new trial, there was no allegation concerning the effectiveness of counsel, the failure to appoint different counsel, or to inform the defendant of his right to proceed *pro se*.

In this appeal, defendant claims he was denied his sixth amendment right to personally conduct his own defense because the trial court failed to advise that he had such a right. He acknowledges that he did not make a direct, verbal request to defend *pro se*, but he claims that numerous factors demonstrated his eagerness to act on his own behalf. According to the defendant, it would penalize those ignorant of their constitutional right to self-representation if the courts required a direct, verbal request to conduct their own defense. Defendant also argues that his actions and comments in the trial court show that he did not know of his right to self-representation and therefore could not have waived this right.

We disagree.

■■ The question of whether the sixth amendment to the United States Constitution guaranteed a defendant the right to conduct his own defense was not firmly resolved until the decision in *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525. The court there held that a defendant in a State criminal trial does have a constitutional right to proceed without the assistance of counsel when he voluntarily and intelligently elects to do so. There is also a State right of self-representation. (Ill. Const. 1970, art. I, §8.) And, it has long been recognized that constitutional rights are entitled to the fullest of procedural safeguards. (*Von Moltke v. Gillies* (1948), 332 U.S. 708, 92 L. Ed. 309, 68 S. Ct. 316.)

However, it has also been recognized that constitutional rights, like others, may be waived, and it has been recently ruled that where a defendant's request to represent himself was not unequivocal, was made at the preliminary hearing but not later renewed and was not cited as error in his post-trial motion, it was waived for purposes of appeal. *People v. Brooks* (1979), 75 Ill. App. 3d 109, 394 N.E.2d 10.

In the case at bench, we believe that—contrary to defendant's assertions—he never expressed a desire to represent himself. In his statements to the trial court he complained of numerous matters, including the State's Attorney's failure to bring charges against certain correctional officers, his treatment by personnel of the Department of Corrections, and the failure of the court to require defendant's presence at the grand jury proceeding. Defendant, in no uncertain terms and on numerous occasions, expressed his displeasure with appointed counsel but also on numerous occasions and in no uncertain terms, he requested that he be represented by "fair and impartial counsel." A review of defendant's statements to the trial court does not show a manifestation of a desire to defend *pro se* or that defendant ever contemplated attempting such a defense. His statements clearly indicated that he wished to be represented by counsel, albeit counsel different than that appointed by the trial court.

Defendant argues that he did not waive his right to represent himself because for a waiver to be effective, it must be knowingly and intelligently made. Defendant, however, misapprehends the nature of the right. The right to defend *pro se* and the right to defend with the assistance of counsel are but two faces of the same coin. The assertion of one right, of necessity, waives the other. These constitutional rights may not actively coexist—they do not do cadence in tandem. (*People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56.) An accused who knowingly and voluntarily elects to manage his own defense relinquishes many of the traditional benefits associated with the right to counsel. The case at bench presents no more than the correlative proposition of this rule.

Even though defendant repeatedly expressed a desire to be represented by counsel, he now contends that the failure of the trial court to inform him, *sua sponte*, of the right to defend himself denied him the opportunity to exercise that right. A similar claim has been made and rejected. In *United States v. White* (D.C. Cir. 1970), 429 F.2d 711, the defendant appealed his convictions arguing that he had expressed dissatisfaction with his trial counsel's handling of the case and the court was therefore required to either substitute new counsel or advise him, *sua sponte*, of his right to proceed *pro se*. Although the *White* case was decided before *Faretta*, the court there noted that it need not resolve the

question of whether the right to represent one's self had constitutional status before addressing the appellant's claim. The situation in *White* did not require such advice. The court stated:

> "Appellant gave no indication of a desire to proceed without counsel. He made no request to be permitted to do so. In expressing dissatisfaction with appointed counsel he was appealing rather to the discretion of the court to substitute another. Especially applicable is the statement in United States ex rel. Maldonado v. Denno, 348 F.2d 12, 15 (2d Cir. 1965), cert. denied, 384 U.S. 1007, 86 S. Ct. 1950, 16 L. Ed. 2d 1020 (1966):
>
>> Regardless of whether he has been notified of his right to defend himself, the criminal defendant must make an unequivocal request to act as his own lawyer in order to invoke the right.
>
> Otherwise, as there also pointed out, convicted criminals would be given a ready tool to upset adverse verdicts after trials at which they have been represented by counsel." 429 F.2d 711, 712.
>
> We agree.

■■ We hold that no error occurs when a trial court fails to advise a defendant of a right to represent himself unless that defendant has clearly and unequivocally expressed a desire to reject the assistance of counsel and to proceed to present his defense *pro se*. The manifestation of this desire must also be timely made. A defendant cannot await the eve of trial and then, hoping for a continuance, announce that he has decided to rely upon his skills rather than counsel's in presenting his defense. Such machinations cannot be used to thwart the administration of justice.

■■ In the present case, defendant also failed to cite this alleged error in his post-trial motion. In this context, this case is remarkably similar to a case decided by our sister court. In *People v. McCoy* (1976), 35 Ill. App. 3d 326, 341 N.E.2d 422, the defendant requested the trial court to dismiss the public defender for failing to provide adequate representation. On appeal, the defendant argued that the trial court erred when it informed him that he could not represent himself. The Fifth District, however, found that this contention had been waived by the defendant's failure to cite it in his post-trial motion. As in *McCoy*, the contention here is removed from the scope of the plain error doctrine because at no time, *including in this appeal*, has the defendant ever expressed a desire to represent himself. Nor does he argue that the court erred in failing to appoint counsel other than the public defender or that the counsel appointed was incompetent.

The defendant has had his day in court.

Affirmed.

LEWIS and GREEN, JJ., concur.