NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250293-U

NO. 4-25-0293

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| STEPHEN CHRISTOPHER PETTAWAY, | ) | No. 23CF309 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan A. Swift, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court did not abuse its discretion in determining defendant made a clear and unequivocal waiver of his right to counsel.

¶ 2  Following a jury trial at which he represented himself, defendant, Stephen Christopher Pettaway, was found guilty of two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a), (a-5) (West 2022)) and sentenced to concurrent terms of five years' imprisonment. On appeal, defendant argues the trial court "erred in allowing [him] to proceed *pro se* when he had not made an unequivocal and clear waiver of counsel." We affirm.

¶ 3  I. BACKGROUND

¶ 4  A. The Charges

¶ 5  On February 7, 2023, the State charged defendant with, in relevant part, two counts of aggravated domestic battery (*id.*), one count of unlawful restraint (*id.* § 10-3(a)), and

one count of resisting a peace officer (*id.* § 31-1(a)). Defendant was indicted on the above charges the following month.

¶ 6                                B. Pretrial Proceedings

¶ 7          In this section, we set forth the relevant facts leading up to the trial court's determination that defendant made a clear and unequivocal request to waive counsel and proceed *pro se*. We note here that throughout the pretrial proceedings, despite being represented by counsel, defendant filed numerous *pro se* motions seeking dismissal of the charges against him on speedy trial grounds. Judge Jennifer Clifford presided over the pretrial proceedings until her recusal on May 16, 2024. Judge Ryan A. Swift presided during the remainder of the proceedings relevant to this appeal.

¶ 8                      1. *Defendant's First Counsel—Frank Perri*

¶ 9          On February 7, 2023, the trial court appointed Frank Perri from the public defender's office to represent defendant. Attorney Perri represented defendant until August 29, 2023, when the trial court granted his motion to withdraw and appointed conflict counsel.

¶ 10                          a. *Pro Se* Speedy Trial Demand

¶ 11          At defendant's arraignment on April 12, 2023, defense counsel requested that the trial court schedule a status hearing for June 14, 2023. Immediately thereafter, defendant, speaking directly to the court, attempted to demand a speedy trial. The court explained to him that his "attorney is not asking to set the case for trial because he would like to have all of the reports and information so that he can have a good defense for you." The court noted that defendant's request was "on the record," but because his "attorney is not asking for that *** , the time between now and the next court date is tolled."

¶ 12                          b. Initial Trial Setting

¶ 13          On June 14, 2023, defense counsel indicated to the trial court that he wanted to "set this matter for trial to move this along for [defendant]." The court set the case for trial for September 5, 2023, and the final jury status hearing for August 29, 2023. The court asked defendant if he understood the trial could proceed in his absence should he willfully fail to appear. Defendant confirmed his understanding and then stated the following: "I asked for my speedy trial [at the arraignment hearing]. I know that it's 725 ILCS 103-5, gave me my—that's a constitutional right, 6th Amendment [(U.S. Const, amend. VI)], and I put it on record [the] other day and *** my 120 days were up on June 6th." The court replied, "I'm not going to keep explaining this. You are represented by counsel. He is not adopting your request for a speedy trial."

¶ 14                         c. Attempt to Clarify Speedy Trial Issue

¶ 15          The parties next appeared in court on August 23, 2023. Defense counsel informed the trial court that he requested the hearing because he had "told [defendant] that [he] was going to bring this case in, just for clarification purposes on speedy trial, things of that nature." Counsel then relayed the efforts he had made to meet with defendant since the last court date:

> "MR. PERRI: But I just want to at least make a record so that you know what I've been trying to accomplish here. Judge, back on August the 14th, I did go and see [defendant] to go over discovery with him, Judge. Unfortunately, Judge, at times we have disagreements with our clients about legal matters. I did bring up *** electronic data the, the digital photographs, Judge, of the alleged victim's injuries and other matters. Unfortunately, Judge, he did not want to see the rest of it. I wanted him to see it, Judge, he did see some of it, but not all of it.
>
> I went to see him on August the 15th again. We did discuss, Judge, and it

was a more cordial and civil conversation. I said, ['[']do you want to see the discovery?['] He didn't want to see it until we had [the speedy-trial] matter resolved, that's fine. I went to see him on August the 17th, Judge, unfortunately he just refused to come out to meet with me although I had everything ready to go over with him, he just refused to come out. And then August the 22nd, Judge, I figured, well let me at least try with the investigator going to see him, Judge, but apparently, he was on the phone and could not meet with my investigator to go over discovery.

So I'm just here to say, Judge, I'm going to do what I can, but I went to see him last week, Judge, because I had a blocked time to go and see him, and I don't always have that type of luxury before this Court. But that being said, I also brought this issue because the speedy trial issue that I tried to explain to him, and then I think as the Court did at one point. We just have disagreements, Judge, and if perhaps we could have some clarity for him, Judge, I would really appreciate it, Judge."

¶ 16    In response to counsel's remarks, defendant asserted that his speedy trial rights were being violated because he "made an oral speedy trial demand on record" at the arraignment hearing and the speedy trial term had since expired. The trial court explained that he could not make a *pro se* speedy trial demand when he was represented by counsel and "Mr. Perri is the one asking for the continuances so that he can be prepared for your case." The court further stated, "[T]he law is clear that when you choose to be represented by an attorney ***, that doesn't mean that he's just some puppet that does whatever you tell him to do." Defendant stated the court's explanation was "not accurate," noting he had "nothing but time to sit up here and look through

the law and case laws." He further stated, "I think where, where you're coming at, or I don't know where it says defense, but it clearly says in 725 ILCS, it says the defendant, not the defense or counsel."

¶ 17 Defendant further noted his dissatisfaction with counsel's representation, stating, "[I]n April, when Mr. Perri came to see me after my court date, I asked [him] to put in for my dismissal of my speedy trial, he said, okay. Mr. Perri avoided me for two months, not answering any calls, not coming to see me." Defendant continued:

"And then when [counsel] came and s[aw] me in July ***, almost four months, you know, is when he started coming at me talking to me about trial. And he expects me to, you know, want and sit and talk to him when *** he doesn't answer any of my questions, hasn't done anything I've asked him. *** [W]hen I sit and be lied to [*sic*], you know, you break that trust, you know. And it's like, how can I sit and listen to somebody that I'm looking at the facts, and you're telling me something different that you—and I asked him, to just show me, why didn't you do it because my case would have been dismissed if you would have done that. And it didn't make any sense."

The trial court explained that it would have been unethical for counsel to file a speedy trial motion when counsel was the one who had requested a continuance at the prior hearing. Defendant again disagreed with the court's explanation, which led to the following exchange:

"[DEFENDANT]: Can I say something, please? Can you tell me the definition of defense and defendant? Because I think this is getting thrown off here, because the defendant is me.

THE COURT: I understand that.

[DEFENDANT]: It's not the defense.

THE COURT: But you've decided to be represented by counsel.

[DEFENDANT]: Okay.

THE COURT: So I don't know how to be more clear than I have. So you are set for trial. On August 29th is the next court date ***, and then the jury trial is set September 5th.

\* \* \*

[DEFENDANT]: Can I, can you tell me where that says *** it's up to my defense for me?

\* \* \*

THE COURT: I cited for you like five cases that say, it has been repeatedly held that the delay may properly be charged against the defendant over his objection where his counsel required more time to prepare.

\* \* \*

THE COURT: At no court date have you tried to not have an attorney. You haven't come in and said, I want to hire my own attorney. You haven't said anything except that you want a speedy trial. Well, you are represented by an attorney who wants to be prepared. He's been an attorney for a very long time and knows what it takes to be prepared for trial, and it doesn't help that you're not meeting with him so that he can get ready for trial. I don't know how to be more clear to you, Mr. Pettaway.

[DEFENDANT]: I, I mean, the thing is here, like I say *** I've never seen anything that says because I have an attorney that I cannot have a speedy trial.

THE COURT: Okay.

[DEFENDANT]: That's a statutory right of mine and, and it's being violated. And [on] top of that, why would you toll my—on April [*sic*] you tolled my days after my days were expired. Why would you toll my days if they were expired? And it's like, come on now, if you're not here right now, *** what did I say? You know, it's like you're, you know, violating your—I'm *** just unlawfully proceeding, like the due process and all that stuff is being violated here.

* * *

THE COURT: Are you going to meet with your attorney? Are you going to help him get ready for your trial?

[DEFENDANT]: No. He's a liar. And he's sending me—he's railroading me. No, I'm not, I don't want nothing to do with [defense counsel].

THE COURT: So what do you want?

[DEFENDANT]: Whatever you, whatever the Court, since you know so much, is best for me.

THE COURT: All right. We're done.

[DEFENDANT]: I know."

¶ 18                d. Attorney Perri Allowed to Withdraw

¶ 19        At the final jury status hearing on August 29, 2023, the trial court noted that defense counsel, at defendant's request, had filed a motion to withdraw. The court inquired if defendant wished to proceed without Attorney Perri, but defendant refused to respond. Instead, he again argued his speedy trial rights were being violated and accused the court of "alter[ing] or

modif[ying]" the record after the fact to cover up its alleged misconduct. The court attempted to determine if defendant wanted new counsel or wished to proceed *pro se*. Defendant did not directly respond and made further accusations of judicial misconduct.

¶ 20 Near the conclusion of the hearing, the trial court and defendant engaged in the following exchange:

"THE COURT: Mr. Pettaway, you've already read this out loud to me. I'm going to mute you at this point. I am trying to ask you; do you want to represent yourself? Do you want to stay with Mr. Perri, or do you want me to appoint another attorney?

[DEFENDANT]: How can I right all my rights though [*sic*], you're telling me I have rights. It's not, it's not—

THE COURT: All right. At this time, you still have Mr. Perri. Mr. Perri, this case is set for trial next week.

[DEFENDANT]: I don't want Mr. Perri. I don't want—

THE COURT: I've asked you what you want then.

[DEFENDANT]: No. Unless he actually steps up and does something, no.

THE COURT: He is actually—

[DEFENDANT]: You can't force me, you can't force me to have somebody that has been ineffective *** and not here for me. And he showed that, he said that—

THE COURT: I'm not forcing you. I've given you—

[DEFENDANT]: —several times.

THE COURT: —choices.

[DEFENDANT]: That's—on top of you all forcing me to have an attorney—

THE COURT: Do you want me to—

[DEFENDANT]: —that is not in my best interest at all, and it's clear—

***

[DEFENDANT]: Somebody that, listen, if somebody doesn't come see you for three months and you ask that person to put in for a speedy trial, knowing that if he puts in my case would be dismissed, and they avoid you for three months, you tell me what that is then. That's ineffective—

* * *

THE COURT: —Mr. Pettaway, you've indicated you don't want Mr. Perri as your attorney, correct?

[DEFENDANT]: Clear, clearly.

***

[DEFENDANT]: And I don't want you as my judge either because clearly you're being biased against me. You're unfair. There's no justice or liberty in this courtroom at all. And like I said, you keep f*** around with my rights. You're telling me I have rights, but you're clearly still showing me that I have zero rights.

* * *

THE COURT: All right. At this time, I'm going to appoint David Carter to be your attorney.

[DEFENDANT]: I don't know who that is.

THE COURT: He's a conflicts counsel. He is not in the Public Defender's

Office.

> [DEFENDANT]: Right. Somebody else to just leave me, leave me alone, right? I asked you, I asked you to withdraw from my case, too, Judge, for real, because this is pure—"

¶ 21 The trial court subsequently entered an order granting Attorney Perri's motion to withdraw and appointing Attorney Carter. The court removed the case from its trial call and continued the proceedings to September 13, 2023.

¶ 22          2. *Defendant's Second Counsel—David Carter*

¶ 23 On August 29, 2023, the trial court appointed conflict attorney David Carter. Attorney Carter served as defendant's counsel until June 11, 2024, at which time the court determined defendant had definitively invoked his right to self-representation.

¶ 24          a. More *Pro Se* Speedy Trial Demands

¶ 25 Between September 13, 2023, and November 30, 2023, the proceedings were continued several times for Attorney Carter to familiarize himself with the case. At each status hearing during this period, defendant continued to argue that his speedy trial rights were being violated. He also filed several *pro se* speedy trial motions despite being represented by counsel.

¶ 26          b. Amended Speedy Trial Motion

¶ 27 On November 30, 2023, defendant, through counsel, filed an amended motion to dismiss the charges on speedy trial grounds. On January 19, 2024, the trial court held a hearing on the motion and, in addition to hearing the arguments of defense counsel and the State, also permitted defendant to present his own argument. Following the hearing, the court took the matter under advisement. On January 30, 2024, the court denied defendant's motion. On February 9, 2024, defendant filed a *pro se* "Motion to Start [Speedy Trial] Term Back Running"

and a *pro se* "Petition for Leave to Appeal" the court's denial of his amended speedy trial motion.

¶ 28                          c. Second Trial Setting and Jury Selection

¶ 29          After denying defendant's amended speedy trial motion on January 30, 2024, the trial court set a final jury status hearing for March 12, 2024, and a trial date for March 19, 2024, and it also entered an order for defendant "to be evaluated by Rosecrance."

¶ 30          On March 18, 2024, a jury was selected but not sworn.

¶ 31                          d. Defendant Claims Ineffective Assistance

¶ 32          On March 19, 2024, after a jury had been selected, the trial court addressed an amended motion *in limine* filed by the State. Defendant protested that he had not received a copy of the filing. The court ordered a brief recess for defendant to discuss the issue with counsel. After the break, counsel explained to the court that the State had amended its motion at the last court date and he had not provided defendant with a copy of the amended motion. But, according to counsel, "the summit [*sic*] and substance" of the two motions was the same, and the amendment had not "made all that much difference." Defendant stated he could "already see how this is gonna go and how this is going." Specifically, he stated, "There's several things that the State is gonna use against me" "that I haven't even heard or even listened to."

¶ 33          The trial court noted defendant had been demanding a speedy trial from the outset and had ample prior opportunities to review discovery—first with Attorney Perri, and then with Attorney Carter. Further complaints by defendant led to the following exchange:

          "MR. CARTER: Your Honor, I pushed this case along—

          ***

          MR. CARTER: —for [defendant]. First, he wanted to deal with the speedy

trial issues, which was my main focus. I addressed that, and as soon as the Court denied our motion, I demanded trial to accommodate [defendant].

[DEFENDANT]: I want to get this over with as much as—

MR. CARTER: Mr.—please, sir. Since then, I've met with, I met with [defendant], I believe it was last week. He refused to talk to me. Then we met again, and I thought we got along quite well.

*** 

MR. CARTER: And at this point, I've done all I can. I'm just putting this on the record. I've done all I can to review documents with him and the case. This isn't an involved case, quite frankly. This is a single incident. This isn't a murder case with a lot of forensic evidence or anything of that nature. This is pretty straightforward. *** I'm ready. And I guess I'm ready as I'll ever be with the cooperation that I've received from [defendant].

*** 

[DEFENDANT]: Yeah, ready to help me sink me. That's what he's ready to do because there's no way, there's no way, as my attorney for you being appointed to me for six, seven months, that you've come and seen me one time. And for one time he seen me for an hour and a half and we didn't go over no videos, no audio and the transcripts. And then he hasn't even came to me and told me what his defense was. So how is it—and I'm, and I'm—this is the thing is—

THE COURT: All right. You were the one—

[DEFENDANT]: —I really wanted to go—

THE COURT: —that has wanted to go to trial.

[DEFENDANT]: Listen, I'm speaking now. I want to go to trial, but it's like I don't want to get sold the f*** out because like I said—

* * *

[DEFENDANT]: Like I said, I want to be represented properly. And he's clearly showing me that he's not from—I just asked him back there. He just told me, I'm not going over that with you. What do you mean? Are you here to represent me properly or not?

MR. CARTER: I did not say that I would not go over things with [defendant], but if he doesn't want to discuss the case—I had all afternoon blocked off—

[DEFENDANT]: And just told me to represent myself.

MR. CARTER: Ma'am, I had all afternoon last week—

[DEFENDANT]: Didn't come see me.

THE COURT: Stop talking.

MR. CARTER: All afternoon last week to go over things. I sat in a room with [defendant] for about a half an hour and he belittled me, Mr. Perri and others and then finally I said, ['W]ell that's enough, I'm going to leave.['] I did ask him what our defense was, which I think most attorneys would ask, which he seemed to take offense to.

But at the end of the day, I did everything I could to work with [defendant] to prepare for trial. So have we put in as much time as I would like? No, we haven't, but that's been on [defendant] because he hasn't agreed to meet with me and go over these things. So I'm as ready as I can be right now. That's all I can

say.

* * *

THE COURT: All right. Mr. Pettaway, what are you asking at this point?

[DEFENDANT]: I want to go to trial, but I want somebody who's going to represent me and be for me.

* * *

THE COURT: *** We have the jury here. It's my intention to bring them in and start the trial today because you have wanted to have a speedy trial.

[DEFENDANT]: I want—

THE COURT: Is that what you—

[DEFENDANT]: —a trial badly. Like I want to get this over with, really, but I cannot—I'm not gonna, I'm not gonna just put myself in somebody's hands who's not for me. Just clearly stated in there that he didn't care and wanted me to represent myself.

* * *

MR. CARTER: Your Honor, I asked [defendant] if he wanted to represent himself. He could ask the Court. Otherwise, you know, he's got me. I'm trying the best I can. That's all I can say. I don't know what [defendant] wants. It sounds like he wants a continuance, but he wants to get this done.

THE COURT: Right. That's what I feel like. You want a continuance, but you also want the trial. So that's what I'm trying to understand from you, because once I bring the jury in and I swear them in as jurors, then we have to do the trial. I haven't sworn them in as jurors yet, so that's why I'm trying to understand from

you. What are you wanting? If you're frustrated, that's fine. *** But we are ready for trial. You've wanted the trial all along.

        ***

[DEFENDANT]: I'm going to just ask [to] represent myself, and I'm gonna, and I'm gonna ask, like I said, you're gonna have to do whatever you're gonna do, but I also will ask, like, for some type of *Krankel* hearing or something, because *** this is—and I'm beyond—

THE COURT: All right. Are you wanting to do the trial today? Are you—

[DEFENDANT]: How can I go over—how can I go to trial when I'm about to—I'm asking to represent myself.

THE COURT: Are you asking for a continuance?

[DEFENDANT]: I mean, I've got motions I would like to put in. I got motions I would like to answer. So, of course, I'm gonna have to ask for [a] continuance. ***

        * * *

[DEFENDANT]: I have zero experience.

        ***

[DEFENDANT]: I'm dumb. I'm illiterate, you know—

THE COURT: All right. I didn't say any of that.

[DEFENDANT]: Well, I mean, it's common sense to see that, come on. If you're my attorney and you see that there's all this evidence against me or the State that's using, you don't go over—me. And you put one motion in for my criminal record? Come on, man. That's like—come on. Like, it's serious. And

then you come and see me—

　　　***

[DEFENDANT]: —one time out of seven months.

THE COURT: So what I'm going to do on your motion is over the State's objection, continue your case. Then we'll set it for a status date to see if you will continue to have Mr. Carter as your attorney. We can have a hearing *** on whether or not you want to represent yourself. ***

　　　* * *

THE COURT: Mr. Pettaway, I'm trying to give you what you want. I'm trying to say that if you want this time, if you want to be able to get copies of all of the discovery and go over it, to give you another chance to talk to Mr. Carter, and then we can have a hearing to see if you want to keep Mr. Carter, or if I'm going to allow you to represent yourself. I'm willing to do those things for you, if that's what you want.

　　　* * *

[DEFENDANT]: You know what, I just want—you know what, let's just do this, but I'm representing myself.

THE COURT: No, that's not how it works.

[DEFENDANT]: No, no, no. You can't make me, you cannot make me have—

THE COURT: But you don't get to just decide everything, Mr. Pettaway.

[DEFENDANT]: No, because I mean, clearly, like I said, this is—he showed me that this is ineffective, but of course, because you're not on my side

and it's been shown several times. It's with—

THE COURT: That is untrue.

[DEFENDANT]: Man, it is. Because if you did, you would answer to my motions. You would do all this stuff. But nothing that I put in gets answered. So I want to represent myself and I want to move forward representing [myself].

* * *

THE COURT: Mr. Pettaway, I have been nothing but patient with you—

***

THE COURT: —and listen[ed] to everything you've said. I've tried to give you everything you've wanted. A speedy trial, a better attorney, time to get up to speed [on everything].

[DEFENDANT]: Where have you been trying to—

***

[DEFENDANT]: —get me a speedy trial at because—

***

[DEFENDANT]: —you've violated that twice.

* * *

THE COURT: All right. I'm going to continue this case on defense motion. Your request time is tolled. The State objected. You are staying with Mr. Carter at this time.

[DEFENDANT]: I'm not taking—

THE COURT: I'm going to set this—

[DEFENDANT]: —Mr. Carter—

- 17 -

THE COURT: —for a hearing date.

[DEFENDANT]: —anymore. I'm not listening to him. I'm not—

THE COURT: That's fine.

[DEFENDANT]: —I'm not going with him.

* * *

[DEFENDANT]: I want to move forward today.

THE COURT: —at your request. No—

[DEFENDANT]: I want to move forward—

THE COURT: —you already requested. You already said you didn't have any of the—

[DEFENDANT]: You said defense. I'm fine.

THE COURT: —the discovery—stop interrupting me.

[DEFENDANT]: No. I'm—

THE COURT: Take him out.

[DEFENDANT]: —I'm tired of this myself.

THE COURT: Take him out now."

¶ 34          e. Trial Court's Ineffective Assistance Inquiry

¶ 35          At the next court date, on May 2, 2024, the trial court asked defendant at the outset, "[W]hat do you want to do today?" Defendant responded, "I want to get this case over with. I want it to be, like, just be done." He complained that the *pro se* speedy trial motion he had filed several months prior had "just never been heard," and if the court "heard that motion[, his] speedy trial days would be up again for the second time." The court explained it could not consider defendant's *pro se* motions so long as he was represented by counsel.

¶ 36          The trial court then conducted an inquiry into defendant's *pro se* allegations of ineffectiveness of counsel. Defendant raised the following complaints about Attorney Carter's representation: (1) counsel failed to review discovery with him; (2) counsel offended defendant by asking him what his defense was; (3) counsel failed to schedule a mental health evaluation for defendant at Rosecrance, as ordered by the court; (4) counsel told defendant he did not care if defendant won or lost because he was getting paid either way; (5) counsel did not meet with defendant when he had been directed to do so by the court; and (6) counsel refused to adopt his speedy trial demands and his appeal of the court's denial of the amended speedy trial motion. Defendant concluded his allegations by stating, "I'm not being properly represented ***, because if he was effective for me he would've seen that I wrote a demand and I was right, you know, by law, I write a written demand, it's supposed to be heard, and my motion, my appeal, it's supposed to be heard." After hearing counsel's response to defendant's allegations and asking several follow-up questions, the court found no potential merit to defendant's allegations of ineffectiveness.

¶ 37          Upon completing its inquiry, the trial court asked defendant multiple times whether he wished to proceed *pro se* or with counsel. Without directly answering the court's questions, defendant stated that he wanted "proper representation" or "effective counsel." The court sought to explain defendant's options as follows:

> "You're interrupting me when I listened to everything you said, I wrote down everything you said. I heard what Mr. Carter said. I then gave you a chance to speak, and now you've interrupted me multiple times. I'm trying to learn from you what you want. Do you want to represent yourself? Do you want to be represented by Mr. Carter? Do you want me to reappoint the Public Defender's

Office, which likely means Mr. Perri again? I'm trying to—I have no control over that, but I—it could be him again. There's only three attorneys assigned to this courtroom from the Public Defender's Office, so I don't know, but it's a possibility. So I don't know what you're asking of me, Mr. Pettaway, in terms of representation, because that's what I'm trying to talk to you about now."

Defendant did not directly respond to the court's questions. After being asked for a fourth time whether he wished to proceed with or without counsel, defendant stated, "I need an effective counsel that is going to help me and really work for me, not against me, and not help the State."

¶ 38 The hearing concluded with the following exchange between defendant and the trial court:

"THE COURT: Do you want an attorney or not? Do you want to represent yourself or not? That's the question I'm asking you. I've asked it like five times. What do you want?

[DEFENDANT]: Man. I want an effective counsel—

THE COURT: You have an effective counsel.

[DEFENDANT]: —that's what I want. Somebody that is effective and, I mean—

THE COURT: You've had two effective counsels.

[DEFENDANT]: Right.

THE COURT: Do you want to be represented by Mr. Carter?

[DEFENDANT]: Let's see. Mr. Carter, are you going to tell her to answer to my motion to, like, to—for my demand for—

THE COURT: All right.

[DEFENDANT]: —continuing?

THE COURT: If you're not going to answer the questions that I'm asking you—

[DEFENDANT]: I'm asking my counsel.

THE COURT: —then I'm concerned—

[DEFENDANT]: I'm asking—

THE COURT: —that you are not fit to stand trial.

[DEFENDANT]: I'm asking my counsel a question right now, is that okay? I mean, he's still my counsel, right?

THE COURT: Yes, he is still your counsel.

[DEFENDANT]: So I'm allowed to ask him a question, right?

THE COURT: This—I asked you a question.

[DEFENDANT]: But I'm trying to ask him so I know whether or not to—

THE COURT: All right. I—what I'm going to order today is the State's going to turn over all the discovery that they have to Mr. Pettaway. Mr. Carter, I want you to go talk to him."

The court instructed defendant to meet with counsel to review the discovery and ask him any questions he might have, and it informed him that at the next court date, on May 16, 2024, it would "address all the remaining issues to see if you feel you'll be able to work with Mr. Carter or not." The court set a final status hearing for June 11, 2024, and a jury trial for June 17, 2024.

¶ 39                                    f. Trial Court's Recusal

¶ 40          At the status hearing on May 16, 2024, Judge Clifford stated, "Mr. Pettaway, it has come to my attention through law enforcement that you may have made comments regarding

me." The trial court continued, "So out of an overabundance of caution I'm going to recuse myself from your case. I believe I can continue to be fair and impartial in your case \*\*\*, but I also want to look out for your best interest. So I'm going to recuse myself from your case."

¶ 41                                                    g. Third Trial Setting

¶ 42            On May 21, 2024, the parties appeared before Judge Swift, the judge newly assigned to defendant's case. The trial court began the hearing by confirming with the parties the previously set final status hearing and jury trial dates. which had been set on May 2, 2024. Defendant then volunteered the following to the court:

> "Before you—I have to address the Court about a few things. I was still in [*sic*] figuring out as far as what I was going to do as an attorney, because there's been several issues as far as my attorney being effective for me. And I put in a motion to keep my speedy trial days running and that hasn't been answered. And if that gets answered, my speedy trial days would be up and that has been pretty much ignored. And this is another reason why—and in my last trial date, it was an issue for my attorney not going over any of the evidence or anything with me for this trial date. And they were in the process of trying to figure out if I was going to go *pro se* or give me another attorney.
>
> And me and Mr. Carter, he's broke that trust between as far as lying to me and stuff. So that's another issue. But the main thing is just, if my motion to keep my term running, because January 30th, I had a speedy trial hearing again and it got denied, and I put in a motion to keep term running and it got filed on the 9th, and I only had 25 days left, but if my motion got heard, my speedy trial days would be up and the case should be dismissed."

¶ 43	The trial court informed defendant it would address the issue of self-representation at the next court date so defendant could further discuss the matter with counsel. Defendant replied, "I'm sure now what I want to do. I don't want him. I can't have him as my attorney. He's not for me." The court repeated that it would address the issue at the next hearing "[b]ecause there's a number of admonishments [it] need[ed] to go over with [defendant] and [it] want[ed] to look at prior rulings in this case as well."

¶ 44	h. *Pro Se* Speedy Trial Motion

¶ 45	On June 5, 2024, defendant filed a *pro se* "Motion to Dismiss for Vindictive Prosecution and Violation of Due Process." In it, he argued that Attorney Perri, Attorney Carter, the State, and the trial court had all conspired against him to deprive him of his right to a speedy trial.

¶ 46	i. Defendant's Waiver of Counsel

¶ 47	On June 11, 2024, defense counsel informed the trial court he had filed a motion to withdraw. According to counsel, during a visit with defendant the week before, defendant asked if counsel would be adopting his *pro se* speedy trial motion, and, when counsel said he would not, defendant "got up and walked out of the room." The court asked defendant for his response, and defendant repeated the same complaints he had asserted on May 2, 2024. The court noted that the "underlying gist" of defendant's frustration with counsel "goes back to [his] belief that there might be a speedy trial issue." The court then stated, "I'm not inclined to grant the motion to withdraw. We're set for trial in six days, let's just do the trial." The following exchange then ensued between defendant, counsel, and the court:

"[DEFENDANT]: —Your Honor, I want to go—listen the day of trial [*i.e.*, March 19, 2024] I wanted to go *pro se* without him and I wasn't allowed to.

- 23 -

THE COURT: Okay.

[DEFENDANT]: And but—

THE COURT: Well, are you asking me today to go—

[DEFENDANT]: —that's—I'm not—

THE COURT: —*pro se*?

[DEFENDANT]: Yes. I don't want to—I can't—I cannot—

THE COURT: Okay.

[DEFENDANT]: *** Like I say, I mean, it's not that I'm—have any animosity or hate towards this man or anything, but, what's obvious, is what I've been through the last eight, nine months with him shows clearly you're not for me and I'm being forced to deal with somebody that's not for me. And if he was—

***

MR. CARTER: Judge, I, I disagree. I, I've been a conflict attorney for going on 16 years now, so I've dealt with all sorts of clients. By far, Mr. Pettaway has been one of the most difficult and I say that with all sincerity.

* * *

THE COURT: Well, at this point, Mr. Pettaway, you're asking to proceed *pro se*?

[DEFENDANT]: Yes, sir.

THE COURT: Because I don't want to belabor the point. I understand this case has been set for trial for—well, once before at least, but since that setting, a number of months. We have out-of-state witnesses who are either now in the jurisdiction or on their way to the jurisdiction. I'm not going to continue the case.

- 24 -

You've had the discovery for some time as well, correct?

[DEFENDANT]: Yeah, I'm ready. I'm ready.

THE COURT: Okay. So understand that if I do allow that, and we're going to go over some things in just a moment, we're going to trial next week, you understand?

[DEFENDANT]: Yeah. I'm, I'm ready.

THE COURT: Okay.

[DEFENDANT]: I've been ready. I just can't go to trial with him.

THE COURT: Okay.

[DEFENDANT]: He sell—he'll sell me out.

THE COURT: All right. Before I rule on whether to allow *** Mr. Pettaway *** to proceed *pro se*, I do have to go over some things here with you."

¶ 48 The trial court then admonished defendant pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). Specifically, the court informed defendant of the nature of the four charges against him and the applicable minimum and maximum sentences prescribed by law. Defendant stated that he understood the nature of the charges and the corresponding sentencing ranges. The court also informed defendant of his right to counsel and the severe disadvantages he would face by waiving that right. Defendant stated that he understood. The court determined that defendant understood the admonishments in Rule 401(a), stating:

"Well, I'm going to find that Mr. Pettaway understands the nature of the charges against him. He's obtained a GED. He does have a good amount of experience in the criminal justice system, albeit, not as an advocate, let's say or as an attorney. He's been advised that he's going to be at a severe, severe

disadvantage based on his lack of training in courtroom and trial procedure, Rules of Evidence and Illinois law. He's further disadvantaged by the fact that he is in custody, so his access to information may be limited by virtue of that."

¶ 49　　　　The following exchange—which culminated in the trial court accepting defendant's request to waive counsel and represent himself—ensued after the court had recited its Rule 401(a) determination:

"THE COURT: I'm strongly advising you to proceed with an attorney. I'm advising, not just you, I would advise anybody. I'm a trained lawyer and I wouldn't go to trial representing myself, so I'm strongly advising you but if you insist—

[DEFENDANT]: Can I—

THE COURT: —on proceeding by yourself as—

[DEFENDANT]: —can I say something, sir?

THE COURT: Yeah, go ahead.

[DEFENDANT]: Man, listen, I am scared to death to go to trial with this man. I'm not—I've—it's not that, like I told you, I'm scared to death. You know, it's obvious, it's beyond obvious that he is not for me at all.

THE COURT: Okay.

[DEFENDANT]: And like I said, I'm better off by myself—hanging myself than let somebody else hang me and that's how I feel.

THE COURT: You understand though, and—

[DEFENDANT]: I don't have a choice, I feel.

THE COURT: —well, and I guess that was going to be my—

[DEFENDANT]: What choices do I have?

THE COURT: —next comment. It may seem like your option is to proceed to trial, have Attorney Carter as your attorney or discharge him and proceed *pro se*. In a nutshell, that is your, that is your option, but I don't want you to feel like you don't have a choice. You are guaranteed under the constitution a right to have an attorney and if you cannot afford—

[DEFENDANT]: An effective counsel.

THE COURT: —I can appoint one. One has been appointed. Based on what's been alleged, I'm finding that Attorney Carter has not been ineffective in his representation. If you, if you—I'm happy to keep Attorney Carter on and see if you guys can work this out between now and Monday. If you are insisting on proceeding *pro se*, I'm—based on my responses from Mr. Pettaway, I'm confident that he's legally competent; I'm not confident in his legal ability, but I'm confident in his competence to represent himself and I'll allow him to do that, but you tell me.

[DEFENDANT]: Nah, he couldn't pay me to represent me.

THE COURT: Okay. So you're insisting on representing yourself?

[DEFENDANT]: Yes, sir.

THE COURT: All right. In that case, I will discharge Attorney Carter from further service in this matter. I'll allow Mr. Pettaway to proceed *pro se*, over the strong admonishments of the Court that it is never a good idea, but I'll find that Mr. Pettaway insists on his right to do so."

¶ 50                                    C. Jury Trial

¶ 51 Defendant's jury trial began on June 17, 2024, and concluded on June 18, 2024. The jury found him guilty of both counts of aggravated domestic battery and not guilty of unlawful restraint and resisting a peace officer. At the conclusion of the trial, the trial court entered an order appointing posttrial counsel at defendant's request.

¶ 52 D. Motions for a New Trial

¶ 53 On June 28, 2024, after posttrial counsel had been appointed, defendant filed a *pro se* motion for a new trial. In it, he raised the same speedy trial arguments he had raised throughout the entirety of the pretrial proceedings. He further alleged that everyone involved in his case had conspired against him to deprive him of his right to a speedy trial: "Because Attorneys Frank Perri, David Carter, and Judge and prosecution conspired together I had [no] one to show my [speedy trial] rights were being violated." Defendant made no allegation that he had not wanted to waive his right to counsel.

¶ 54 On December 23, 2024, defendant, through counsel, filed an amended motion for a new trial. In it, defendant argued he had been "denied meaningful access to review the State's evidence and prepare his defense" and the trial court had committed several errors at trial. Again, he did not argue that he had not wished to waive counsel. The court denied defendant's motion.

¶ 55 E. Sentencing

¶ 56 On March 14, 2025, the trial court sentenced defendant to concurrent terms of five years' imprisonment on the aggravated domestic battery convictions.

¶ 57 This appeal followed.

¶ 58 II. ANALYSIS

¶ 59 On appeal, defendant argues the trial court "erred in allowing [him] to proceed *pro se* when he had not made an unequivocal and clear waiver of counsel." Defendant contends

- 28 -

that three reasons support his claim. First, defendant asserts that he "did not clearly and unequivocally invoke his right to self-representation [where] it was apparent from the record that he wanted effective counsel and had no real desire to represent himself." Second, he contends his "earlier indication that he might want to represent himself" was later "negated" when he acquiesced in representation by counsel by "immediately abandon[ing his] request at the end of the trial, when he asked for an attorney at sentencing." Third, defendant maintains that "the timing of [his] request, after meaningful proceedings had already begun and trial was about to commence, support[s] a finding that [his] statements were not an unequivocal request to represent himself." The State responds that "defendant clearly and unequivocally invoked his right to self-representation after a protracted pattern of deliberate obstruction."

¶ 60     "It is well established that the sixth amendment to the United States Constitution guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel." *People v. Haynes*, 174 Ill. 2d 204, 235 (1996) (citing *Faretta v. California*, 422 U.S. 806, 833-34 (1975)). To exercise the right of self-representation, "a defendant must knowingly and intelligently relinquish his right to counsel." *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011) (citing *Faretta*, 422 U.S. at 835). "It is well settled that waiver of counsel must be clear and unequivocal, not ambiguous." *People v. Burton*, 184 Ill. 2d 1, 21 (1998). "A defendant waives his right to self-representation unless he 'articulately and unmistakably demands to proceed *pro se*.' " *Id.* at 22 (quoting *United States v. Weisz*, 718 F.2d 413, 426 (D.C. Cir. 1983)). "A defendant must explicitly inform the trial court he wants to proceed *pro se* because 'anything else is an effort to sandbag the court and the opposition, to seek an acquittal with an ace up the sleeve to be whipped out in the event of conviction.' " *Id.* (quoting *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992)); see *People v. Mayo*, 198 Ill. 2d 530,

538 (2002) (stating that an "unequivocal" request to waive counsel is necessary to "(1) prevent the defendant from appealing the denial of his right to self-representation or the denial of his right to counsel, and (2) prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*").

¶ 61 "In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *Baez*, 241 Ill. 2d at 116. The "determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances of that case" (*id.*), and "courts have looked at the overall context of the proceedings" in making that determination (*Burton*, 184 Ill. 2d at 22). Both the United States Supreme Court and our supreme court have cautioned that due to the fundamental nature of the right to counsel, "[c]ourts must 'indulge in every reasonable presumption against waiver' of the right to counsel." *Id.* at 23 (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). "Even if a defendant gives some indication that he wants to proceed *pro se*, he may later acquiesce in representation by counsel *** by vacillating or abandoning an earlier request to proceed *pro se*." *Id.* "The timing of a defendant's request is also significant. A number of courts have held that a defendant's request is untimely where it is first made just before the commencement of trial, after trial begins, or after meaningful proceedings have begun." *Id.* at 24 (compiling cases).

¶ 62 We review a trial court's determination concerning the constitutional validity of a criminal defendant's waiver of counsel and corresponding invocation of the right to self-representation for an abuse of discretion. See, *e.g.*, *Baez*, 241 Ill. 2d at 116 (citing *Burton*, 184 Ill. 2d at 25). "An abuse of discretion occurs only where the trial court's decision is

arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree to it." *People v. Rivera*, 2013 IL 112467, ¶ 37.

¶ 63　　　　Defendant first contends that he "did not clearly and unequivocally invoke his right to self-representation [where] it was apparent from the record that he wanted effective counsel and had no real desire to represent himself." More specifically, he asserts that his

> "overwhelming focus in the record on the performance of his counsels, combined with a notable lack of emphasis on a desire to represent himself, and a continual reassertion of his right to effective counsel, shows [he] did not effectively waive counsel, but rather desired counsel that could effectively represent him."

¶ 64　　　　We find the facts in *People v. Trotter*, 2015 IL App (1st) 131096, similar to those now before us, and the First District's analysis is instructive. In *Trotter*, the defendant was represented by counsel from January 2007 until May 2012. *Id.* ¶ 3. At the first court date, defense counsel informed the trial court the defendant wished to demand a speedy trial, although counsel needed more time to prepare for trial. *Id.* The court told the defendant, " '[Y]our lawyer is telling me one thing and you're telling me something else, it puts me in a bit of a conflict because I can only hear from one voice. Either your lawyer is representing you or you are going to be representing yourself.' " *Id.* Between May 2010 and January 2011, the defendant filed additional *pro se* speedy trial motions *Id.* ¶¶ 5, 6. Then, on "five separate court dates, [the] defendant continued to demand trial although he was represented by counsel." *Id.* ¶ 7. In April 2012, the defendant told the court, " 'I'm not asking that counsel represent me. I can represent myself.' " *Id.* The court gave the defendant time to consult with his attorneys, and on May 3, 2012, it asked him if he wanted to represent himself. *Id.* ¶ 8. The defendant answered, " 'I want you to hear my motion. If I have to represent myself for you to hear my motion, yes.' "

*Id.* The court questioned the defendant further, and, "[a]fter numerous requests to have [him] articulate whether he wanted to proceed *pro se*," the court stated that it would " 'infer from everything that is being said and from everything that [the] defendant said before, he wants to be *pro se*. He wants to assert his rights under the Speedy Trial Act [(725 ILCS 5/103-5 *et seq.* (West 2012))]. You will be allowed to represent yourself.' " *Id.* In May 2012, the trial court asked the defendant if he still wanted to represent himself, to which the defendant replied, " 'I never felt that I was representing myself. You know, you told me that you got rid of the lawyer, but since I'm representing myself[,] I'm okay.' " *Id.* ¶ 11. In August 2012, "the State told the court that when they met with [the] defendant earlier in the month to discuss the trial, he stated that he had been forced to go *pro se* and had not actually waived his right to counsel." *Id.* ¶ 12. Ultimately, the defendant represented himself at his jury trial. *Id.* After being found guilty, the court appointed the defendant posttrial counsel at his request. *Id.* ¶ 29. The defendant alleged in a motion for a new trial that was denied that he had " 'never indicated in any way that he did not want counsel's representation.' " *Id.*

¶ 65        On appeal, the defendant argued the trial court had erred in finding an unequivocal waiver of counsel where his statements were " 'contradictory and ambiguous.' " *Id.* ¶ 37. The *Trotter* court disagreed. *Id.* ¶ 34. It began its analysis by highlighting the important fact that, "[a]lthough [the] defendant was represented by counsel for the majority of his pretrial proceedings, the record reveals [he] submitted a number of both oral and written *pro se* motions demanding, *inter alia*, a speedy trial." *Id.* The *Trotter* court then noted that in response to the trial court's repeated assertions that "it would not hear his *pro se* motions while he was represented by counsel," the "defendant stated that he waived his right to counsel if it meant the court would hear his motions." *Id.* ¶ 37. In concluding the trial court had not abused its discretion

- 32 -

in finding a valid waiver of counsel, the *Trotter* court invoked the legal principle that "a defendant has either the right to counsel or the right to represent himself, and is thus not entitled to 'hybrid representation, whereby he would receive the services of counsel and still be permitted to file *pro se* motions.' " *Id.* (quoting *People v. Handy*, 278 Ill. App. 3d 829, 836 (1996)).

¶ 66 Here, a review of the facts shows that throughout the pretrial proceedings, defendant sought the same form of "hybrid representation" as the defendant in *Trotter*. However, as the *Trotter* court correctly indicated, criminal defendants have no right to such representation. See *id.* As discussed below, the record shows that after months of *pro se* filings while being represented, defendant ultimately made the knowing and voluntary decision to unequivocally waive his right to counsel and proceed *pro se*.

¶ 67 Like the defendant in *Trotter*, defendant here, despite being represented by counsel, filed numerous *pro se* speedy trial motions and attempted to demand a speedy trial *pro se* at nearly every pretrial hearing. Perri was allowed to withdraw because defendant refused to work with him after counsel had declined to adopt his *pro se* speedy trial motions, which counsel considered meritless. Then, even after Carter had adopted and argued defendant's speedy trial motion, defendant filed another *pro se* motion and alleged that counsel was rendering ineffective assistance by failing to adopt it. Defendant argues on appeal that the fact that he repeatedly indicated he wanted "proper representation" and "effective counsel" shows he did not actually want to represent himself. We find defendant's assertions are belied by the record. In addressing Carter's motion to withdraw, the trial court stated, "I'm not inclined to grant the motion to withdraw. We're set for trial in six days, let's just do the trial." However, defendant immediately voiced his displeasure by reminding the court that on "the day of trial, I wanted to go *pro se* without [counsel] and I wasn't allowed to." The court then asked defendant—twice,

- 33 -

directly—whether he was "asking to proceed *pro se*." Both times, defendant answered, "Yes." After admonishing defendant pursuant to Rule 401(a), the court asked him again, "So you're insisting on representing yourself?" Defendant responded, "Yes, sir."

¶ 68    Based on the above, we reject defendant's assertion that his focus on his attorneys' effectiveness throughout the pretrial proceedings, coupled with his repeated statements that he wanted "proper representation," show he merely desired effective counsel and never actually wanted to represent himself. Instead, the record establishes that his practice of filing motions *pro se* while being represented became untenable and when pressed by the trial court to choose between representation by counsel and proceeding *pro se*, he clearly communicated his choice to waive counsel and proceed *pro se*. Defendant made a knowing and voluntary decision to waive his right to counsel and invoke his right to self-representation.

¶ 69    Defendant cites *Burton* in support of his claim that he "did not clearly and unequivocally invoke his right to self-representation." In that case, the defendant claimed the trial court erred when it denied his request to waive counsel and proceed *pro se*. *Burton*, 184 Ill. 2d at 20. In affirming, the supreme court found the defendant had not made a "clear and unequivocal request to represent himself," but instead had conditioned his willingness to proceed *pro se* on being allowed access to certain records. *Id.* at 24-25. First, we note the procedural postures of the two cases are obviously different—defendant's claim of error in this case is not based on the trial court's denial of a request to proceed *pro se*, but on its granting of the request. Second, unlike in *Burton*, defendant's request to waive counsel and proceed *pro se* was unconditional. Thus, we find *Burton* does not support defendant's position.

¶ 70    As for defendant's second contention, he maintains that his "earlier indication that he might want to represent himself" was later "negated" when he acquiesced in representation by

counsel by "immediately abandon[ing his] request [to proceed *pro se*] at the end of the trial, when he asked for an attorney at sentencing." Defendant cites *Burton* for the proposition that "[i]n determining whether a defendant seeks to relinquish counsel, courts may look at the defendant's conduct following the defendant's request to represent himself." *Id.* at 23-24. However, as we previously pointed out, in *Burton*, the defendant's request to proceed *pro se* was denied, the opposite of what occurred here. Defendant fails to identify any caselaw suggesting that a defendant's desire to accept representation after previously electing to waive the right to counsel should undermine the validity of his prior waiver. This omission is unsurprising as such a proposition would place a trial court in a trick bag—if the court were to grant a defendant's request to proceed *pro se*, it might well be disinclined to grant a request for counsel later in the proceedings if doing so would somehow cast doubt on the propriety of its earlier decision.

¶ 71          Lastly, defendant contends that "the timing of [his] request, after meaningful proceedings had already begun and trial was about to commence, support[s] a finding that [his] statements were not an unequivocal request to represent himself." While the supreme court in *Burton* found that "[a] number of courts have held that a defendant's request is untimely where it is first made just before the commencement of trial, after trial begins, or after meaningful proceedings have begun" (*id.* at 24), we note that each case cited by the supreme court is, again, distinguishable in that the trial courts in those cases had denied, not granted, the defendants' requests to waive counsel. See *United States v. Jones*, 938 F.2d 737 (7th Cir. 1991); *United States v. Oakey*, 853 F.2d 551 (7th Cir. 1988); *United States v. Betancourt-Arretuche*, 933 F.2d 89 (1st Cir. 1991); *Pitts v. Redman*, 776 F. Supp. 907 (D. Del. 1991); *People v. Woodruff*, 85 Ill. App. 3d 654 (1980); *Mallory v. State*, 483 S.E.2d 907 (Ga. 1997). Defendant has failed to cite a single case finding a trial court had erred in *granting* a defendant's request to waive counsel on

- 35 -

the basis the request was untimely. We further note that, contrary to defendant's assertion, his request to waive counsel and proceed *pro se* was not "first made"—as the *Burton* court discussed—on the date it was granted. *Burton*, 184 Ill. 2d at 24. Rather, it was "first made" nearly three months prior, on March 19, 2024. Moreover, the *Burton* court went on to state, "Once such [meaningful] proceedings have begun, the trial judge has discretion to deny a defendant's request to represent himself." *Id.* This statement necessarily implies that a trial court also has the discretion to grant a defendant's request to proceed *pro se* after meaningful proceedings have begun. Here, as has already been discussed, the trial court encouraged defendant to proceed with counsel on June 11, 2024, but defendant refused and instead definitively invoked his right to self-representation. Thus, we cannot say the court abused its discretion in granting defendant's unequivocal request to proceed *pro se*, even when it was made just six days before trial.

¶ 72 Accordingly, for the reasons discussed, we find that defendant clearly and unequivocally requested to waive his right to counsel and definitively invoked his right to self-representation, and, as a result, the trial court did not abuse its discretion in granting defendant's request.

¶ 73 III. CONCLUSION

¶ 74 For the reasons stated, we affirm the trial court's judgment.

¶ 75 Affirmed.